**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MAMA CARES FOUNDATION, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 09-cv-2395 (RCL) |
| | ) | |
| NUTRISET SOCIÉTÉ PAR ACTIONS | ) | |
| CIMPLIFIÉE, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

## I.      INTRODUCTION

Before the Court is defendants' motion [19] to dismiss plaintiffs' first amended complaint

[17].  Plaintiffs' complaint contains two distinct claims.  First, plaintiffs seek a declaratory

judgment under 28 U.S.C. § 2201 for patent noninfringement and invalidity.  Defendants move

to dismiss this claim for lack of subject matter jurisdiction and for failure to state a claim for

relief.  Second, plaintiffs assert a claim for false patent marking under 35 U.S.C. § 292.

Defendants move to dismiss this claim for lack of personal jurisdiction and for failure to state a

claim for relief.  Having carefully considered the motion, opposition, reply, surreply, and

response to the surreply, the Court will grant defendants' motion to dismiss.

## II.      BACKGROUND

Defendant Nutriset Société Par Actions Cimplifiée ("Nutriset") is French company

formed in 1986 and based in Malaunay, France.  Defendant Institut de Recherche pour le

Developpement ("IRD") is a French public science and technology research institute affiliated

with various French ministries.  In 1997, defendants applied for a patent in the United States

concerning the preparation and use of foods or nutritional supplements in the treatment of malnutrition and later received United States Patent No. 6,346,284 (the "'284 Patent"). Subsequently, defendants received a number of related international patents. Nutriset administers the patents and the development of products under them pursuant to an agreement between the defendants. Pls.' Mot. to Dismiss 2-3.

Defendants jointly developed Plumpy'nut®, a Ready-to-Use Therapeutic Food ("RUTF") designed to treat severe acute malnutrition in children and vulnerable adults around the world. Plumpy'nut® is a peanut-based product that does not need to be mixed with water, has a two-year shelf life, and does not require refrigeration. These qualities make Plumpy'nut® a particularly effective tool in combating severe malnutrition in developing countries. Pls.' Mot. to Dismiss 2-3. The Plumpy'nut®'s packaging contains the marking "IRD-Nutriset patent/Brevet/Patente." Def. Mot. to Dismiss Ex. 8.

Plaintiffs Mama Cares Foundation and Breedlove Foods are not-for-profit companies who have developed their own peanut-based RUTF products designed to treat malnutrition. Compl. ¶¶1, 2, 20. Plaintiffs allege that they were somehow "made aware" of the '284 Patent and that defendants "have declined to license others in the United States to manufacture a product allegedly covered by the '284 Patent . . . ." Compl. ¶¶20-21. Plaintiffs further allege that defendants "sent letters to organizations interested in producing nut-based RUTFs that indicate [defendants'] unwillingness to license the '284 Patent. . . ." Compl. ¶22. Plaintiffs allege that these actions left them "no choice" but to file a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, for patent noninfringement and invalidity, as well as a claim under 35 U.S.C. § 292 for false patent marking. Compl. ¶ 23.

III.   ANALYSIS

Defendants have moved to dismiss each of plaintiffs' two claims.  First, defendants have moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss plaintiffs' declaratory judgment claim for lack of subject matter jurisdiction.  Defendants contend that this Court has no subject matter jurisdiction because plaintiffs do not present a justiciable "case" or "controversy" under Article III of the Constitution and under the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq*.  Second, defendants have moved to dismiss plaintiffs' false patent marking claim for lack of personal jurisdiction or, in the alternative, for failing state a claim for relief. Fed. R. Civ. Pro. 12(b)(2), (6).  The Court addresses each of these two claims in turn.[1]

## A.      Declaratory Judgment Claim

Plaintiffs seek a declaratory judgment holding that, *inter alia*, plaintiffs' have not infringed on the '284 Patent and that the '284 Patent is invalid.  Defendants move to dismiss plaintiffs' non-infringement claim first for lack of subject matter jurisdiction.  The Declaratory Judgment Act provides, in relevant part, that

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. §2201(a). "The 'actual controversy' requirement of the Declaratory Judgment Act is rooted in Article III of the Constitution, which provides for federal jurisdiction over only 'cases and controversies.'" *SanDisk Corp. v. STMicroelectronics*, 480 F.3d 1372, 1378 (Fed. Cir. 2007).

Until recently, the Federal Circuit applied a two-prong test for determining the existence of declaratory judgment authority.  *See, e.g.*, *Teva Pharms. USA, Inc. v. Pfizer Inc.*, 395 F.3d 1324, 1332 (Fed. Cir. 2005); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054,

---

[1] In addressing patent law, this Court applies Federal Circuit law rather than D.C. Circuit law.  *See Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856-57 (Fed. Cir. 1999).

1058 (Fed. Cir. 1995). The first prong examined whether conduct by the patentee created a

"reasonable apprehension" of suit on the part of the declaratory judgment plaintiff. *Super Sack*,

57 F.3d at 1058. The second prong focused on the declaratory judgment plaintiff's conduct, and

examined whether there had been "meaningful preparation" to conduct potentially infringing

activity. *DuPont Merck Pharm. Co. v. Bristol-Myers Squibb Co.*, 62 F.3d 1397, 1401 (Fed. Cir.

1995) (quoting *Arrowhead Indus. Water, Inc. v. Echolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir.

1988)).

However, subsequent Federal Circuit cases have recognized that the Supreme Court's

decision in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604

(2007), rejected the "reasonable apprehension" prong. *See SanDisk*, 480 F.3d at 1380; *Teva*

*Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007). The

*MedImmune* court adopted a broader test for determining declaratory judgment authority:

"whether the facts alleged, under all the circumstances, show that there is a substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 127 (quoting

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

The Federal Circuit applied this totality of the circumstances test in *SanDisk Corp. v.*

*STMicroelectronics, Inc.,* 480 F.3d 1372 (Fed. Cir. 2007). There, STMicroelectronics ("ST")

had entered negotiations with SanDisk over a cross-licensing agreement. *Id.* at 1374-76. During

the negotiations, ST gave SanDisk a "packet of materials, over 300 pages in length, containing,

for each of ST's fourteen patents under discussion, a copy of the patent, reverse engineering

reports for certain of SanDisk's products, and diagrams showing a detailed infringement analysis

of SanDisk's products." *Id.* at 1382. ST also used "seasoned litigation experts" to detail "on an

element-by-element basis, the manner in which ST believed each of SanDisk's products infringed the specific claims of each of ST's patents." *Id.* ST provided SanDisk with "a studied and determined infringement determination and asserted the right to a royalty based on this determination." *Id.* In response to these assertions by ST, SanDisk "maintained that it could proceed in its conduct without the payment of royalties to ST." *Id.* In light of these facts, the *SanDisk* court held that "a substantial controversy" existed "between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas.*, 312 U.S. at 273).

The more recent *Innovative Therapies* decision sheds additional light on what the Federal Circuit considers a "substantial controversy" of "sufficient immediacy and reality." *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,* 599 F.3d 1377 (Fed. Cir. 2010). In that case, the Federal Circuit upheld the dismissal of Innovative Therapies, Inc.'s ("ITI") declaratory judgment action against Kinetic Concepts, Inc. ("KCI"). ITI argued that the "confluence of three factors, taken together, established the existence" of a substantial controversy. *Id.* at 1379.

First, ITI had represented to the Food and Drug Administration that their device had the "same technological characteristics" as a previously approved wound therapy device and other FDA approved devices that KCI had charged with infringement. *Id.* at 1379-80. The Federal Circuit, however, disagreed that this fact established a substantial controversy, noting that "representations to a third person about 'technological characteristics' do not establish a justiciable controversy . . . ." *Id.* at 1380. The Federal Circuit relied on the fact that "KCI had not seen any device produced or intended to be produced by ITI, that no such device had been sold or offered for sale, and that KCI had not charged ITI with infringement as to any such device." *Id.*

Second, ITI's Chief Technology Officer had "informal[ly]" contacted two former colleagues at KCI under "the guise of friendly conversations" who informed him that KCI would "aggressively go after" ITI and that the odds were "100%" of a lawsuit. *Id.* at 1380-81. The Federal Circuit agreed with KCI that these conversations merely "produced impromptu responses, not an assertion of patent rights," *id.* at 1380, and that the "indirection reflected in these conversations did not produce a controversy of such 'immediacy and reality' as to require the district court to accept declaratory jurisdiction," *id.* at 1381.

Third, ITI relied on the fact that KCI had a "history of litigation to enforce its patents" to establish declaratory jurisdiction. *Id.* at 1381. The Federal Circuit concluded that "while prior litigation is a circumstance to be considered in assessing the totality of circumstances, the fact that KCI had filed infringement suits against other parties for other products does not, in the absence of any act directed toward ITI, meet the minimum standard discussed in *MedImmune*." *Id.* at 1382.

Defendants here present a stronger case for dismissal than the *Innovative Therapies* court confronted and a clearly distinguishable case from *SanDisk*. Plaintiffs' first amended complaint alleges the following facts relevant to the "substantial controversy" inquiry:

> 21.    Nutriset and IRD have declined to license others in the United States to manufacture a product allegedly covered by the '284 Patent and [have] threatened to sue anyone who in [their] view makes or sells an allegedly infringing nut-based RUTF.
>
> 22.    The RUTF-making industry has been warned about infringing the '284 Patent. Nutriset and IRD have sent letters to organizations interested in producing nut-based RUTFs that indicate Nutriset's and IRD's unwillingness to license the '284 Patent and reinforces Nutriset's and IRD's belief that producing these RUTFs may constitute infringement of the '284 Patent.
>
> 23.    As a result of Nutriset's assertions, Mama Cares and Breedlove have been given no choice but to seek assurance through the courts that their nut-based

6

RUTFs can be manufactured and distributed to severely malnourished children without violating the '284 Patent.

To summarize, plaintiffs allege that Nutriset has "declined to license" to third parties, and that Nutriset has generally "warned" the industry that it would not tolerate infringement of the '284 Patent.  Unfortunately for plaintiffs, these facts are insufficient to establish an actual controversy under the central lesson of *Innovative Therapies*: that a patentee's actions toward third parties are generally not sufficient to establish declaratory judgment jurisdiction.  *Innovative Therapies*, 599 F.3d at 1380 ("Representations to a third person about 'technological characteristics' do not establish a justiciable controversy . . . .").  *SanDisk* also does nothing to support plaintiffs' cause on this point.  In this case, plaintiffs, unlike ITI in *SanDisk*, presented defendants with no 300-page packet of materials or detailed infringement analysis by litigation experts.

Further, while the *Innovative Therapies* court found that KCI's "history of litigation" enforcing its patents "is a circumstance to be considered in assessing the totality of the circumstances," *id.* at 1382, Nutriset's single alleged instance of patent litigation—where Nutriset brought a case in Kenya—is hardly a "history" of litigation.  Pls.' Surreply 3.  Regardless of whether Nutriset maintained an active portfolio of patent enforcement litigation, *Innovative Therapies* teaches that there still must be an "act directed toward [plaintiffs]." *Innovative Therapies*, at 599 F.3d at 1382.

Finally, the *Innovative Therapies* court dismissed KCI in spite of the fact that KCI executives promised ITI a "100%" chance of bringing an enforcement action—albeit during two informal phone calls.  *Id.* at 1380-81.  Let it be clear: plaintiffs' complaint fails to allege any contact between plaintiffs and defendants prior to litigation, informal or otherwise.  In the absence of any affirmative act by plaintiffs toward defendants (or vice versa), plaintiffs cannot

establish a "substantial controversy" of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas.* 312 U.S. at 273; *MedImmune*, 547 U.S. at 127.

Plaintiffs rely heavily on *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358 (Fed. Cir. 2009), where the Federal Circuit held that an exchange of letters between the litigants discussing prospects for negotiation created declaratory judgment jurisdiction. Plaintiffs contend that the proper standard in this case should come from *Hewlett-Packard*: whether Nutriset's conduct could "reasonably [be] inferred as demonstrating intent to enforce a patent." *Id.* at 1363. Following this standard, plaintiffs argue that Nutriset's conduct toward third-parties demonstrates its intent to enforce the '284 Patent. Pls.' Surreply 2.

However, contrary to plaintiffs' contention, this language from *Hewlett-Packard* was intended to be descriptive of the type of evidence which courts may consider—objective evidence of intent as opposed to subjective evidence. *Hewlett-Packard* did not modify the totality of the circumstances test applied in *MedImmune*, *SanDisk,* and reaffirmed last year in *Innovative Therapies*. In fact, the same "substantial controversy" of "sufficient imminence and reality" standard is quoted and relied at the beginning of *Hewlett-Packard*'s analysis. *Hewlett-Packard*, 587 F.3d at 1361. Therefore, plaintiffs' reading of *Hewlett-Packard* is inconsistent with both the language of *Hewlett-Packard* and the Federal Circuit's subsequent *Innovative Therapies* decision. Moreover, *Hewlett-Packard* concerns a direct exchange of letters between a patentee and a potential infringing party—inapposite to Nutriset's third-party representations and plaintiffs' utter lack of communication with Nutriset. Therefore, *Hewlett-Packard* does nothing to rescue plaintiffs' declaratory judgment claim from dismissal.

Plaintiffs' final argument is that they should be allowed to conduct jurisdictional discovery in lieu of this Court dismissing their declaratory judgment claim for lack of subject

matter jurisdiction.  However, "[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim."  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990). Jurisdictional discovery in this case would amount to nothing more than a fishing expedition. Plaintiffs seek discovery on something they should know already—whether Nutriset has acted objectively toward plaintiffs' in a manner demonstrating Nutriset's intent to enforce the '284 Patent.  If defendants do not already know whether Nutriset has acted toward them, contacted them, or threatened them in any way, jurisdictional discovery will not cure this deficiency.

In light of the foregoing, plaintiffs' declaratory judgment claim cannot stand because it fails to establish an Article III case or controversy.  Because the Court dismisses plaintiffs' declaratory judgment claim for lack of subject matter jurisdiction under Rule 12(b)(1), it need not address defendants' argument under Rule 12(b)(6) for failure to state a claim for relief.

### B.        False Patent Marking Claim

Defendants move to dismiss plaintiffs' false patent marking claim under two theories. First, defendants argue that this Court lacks personal jurisdiction because plaintiffs' claim falls outside the scope of the federal patent long-arm statute.  *See* 35 U.S.C. § 293.  Second, defendants argue that plaintiffs have failed to state a claim for relief because plaintiffs fail to allege that Plumpy'nut® is unpatented.  This Court addresses each theory in turn.

### 1.        Personal Jurisdiction

Plaintiffs argue that this Court may exercise personal jurisdiction over defendants' under the federal patent long-arm statute, 35 U.S.C. § 293.  Section 293 confers personal jurisdiction on this Court over patentees who do not reside in the United States if the foreign patentee fails to designate in writing a person in the United States for receipt of process, or if that person cannot

be found, *and* the claims at issue in the case "respect" the foreign patentee's patent or rights

thereunder.  *See* 35 U.S.C. § 293.[2]  The statute reads:

> Every patentee not residing in the United States may file in the Patent and
> Trademark Office a written designation stating the name and address of a person
> residing within the United States on whom may be served process or notice of
> proceedings affecting the patent or rights thereunder.  If the person designated
> cannot be found at the address given in the last designation, or if no person has
> been designated, the United States District Court for the District of Columbia
> shall have jurisdiction and summons shall be served by publication or otherwise
> as the court directs.  The court shall have the same jurisdiction to take any action
> *respecting the patent or rights thereunder* that it would have if the patentee were
> personally within the jurisdiction of the court.

35 U.S.C. § 293 (emphasis added).  The issue before the Court is whether plaintiffs' claim for

false patent marking is an "action respecting the patent or rights thereunder" such that the Court

may assert personal jurisdiction over the defendant.  *Id.*

The D.C. Circuit has provided some guidance on this issue.  The circuit *en banc* held that

a suit over patent ownership "falls comfortably within [the] boundaries" of section 293.

*National Patent Development Corp. v. T.J. Smith & Nephew, Ltd.,* 877 F.2d 1003, 1009 (D.C.

Cir. 1989).  Additionally, the D.C. Circuit in *Riker* upheld jurisdiction under section 293 where a

plaintiff alleged that the provisions in a defendant's licensing agreement constituted "patent

misuse."  *Riker Laboratories, Inc. v. Gist-Brocades N.V.*, 636 F.2d 772, 778-79 (D.C. Cir. 1980).

The *Riker* court held that it was not interpreting "mere license terms but the effect under the

antitrust laws of the terms of the patent license on rights under the patent."  *Id.* at 778-79.

By contrast, when the essence of a plaintiff's claim is a breach of contract or the

interpretation of a license agreement, this Court had held that such a claim does not "respect[]

the patent or rights thereunder."  *See Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*,

---

[2] Section 293 was recently amended by the Leahy-Smith America Invents Act, Pub. L. No. 112-29 § 9, Sept. 16, 2011, 125 Stat. 284.  This technical amendment substituted the United States District Court for the Eastern District of Virginia in place of this Court.  However, this amendment does not apply to civil actions pending at the time of enactment.  *Id.* § 9(b).

332 F. Supp. 2d 63 (2004) (Friedman, J.); *Park v. Arnott*, Civ. Action No. 89-3257, 1991 WL

220288 (D.D.C. Oct. 17, 1991) (Lamberth, J.).  The guiding principle from these cases is that

some "incidental" involvement of a patent to a plaintiff's claim is not enough.  *Purdue Research*,

332 F. Supp. 2d at 69-70; *Park*, 1991 WL 220288 at *3-4.

Defendants' argument, however, does not follow the typical path litigants have used to

avoid personal jurisdiction under section 293—that is, defendants do not argue that plaintiffs'

false patent marking claim has only an incidental relationship with patent law.  Defendants

instead contend that personal jurisdiction under section 293 cannot exist unless the plaintiffs'

claim "specifically implicate[s] the foreign patentee's U.S. patent."  Def. Mot. to Dismiss 21.

Defendants rely on the fact that the Plumpy'nut® product is marked with only "a generic

statement indicating that the product is covered by 'IRD-Nutriset Patent.'"  *Id.*  Since the

marking on Plumpy'nut® does not specifically reference the '284 Patent, defendants contend that

the false patent marking claim does not "respect" the '284 Patent as required by section 293.

Defendants misread the text of section 293.  Section 293 requires that plaintiffs' "*action*

respect[] the patent or rights thereunder . . . ."  (emphasis added).  Only the "action" must respect

the '284 Patent.  There is no requirement that the marking on Plumpy'nut® explicitly reference

the '284 Patent.  By "respect" the statute means "to have regard or reference to: relate to: be

concerned with."  *Webster's Third New International Dictionary: Unabridged* 1934 (1965).

Therefore, the real question before the Court is whether plaintiffs' claim for false patent marking

"respects"—e.g., concerns or relates to—the '284 Patent.

A false patent marking claim, *inter alia*, requires an "unpatented article" with the word

"patent" affixed to it.  35 U.S.C. § 292(a).  If the Plumpy'nut® bar is covered by the '284 Patent,

it would not be an "unpatented article."  Accordingly, the scope of the '284 Patent is directly

implicated in plaintiffs' claim for false patent marking, and thus, this is an "action respecting the patent or rights thereunder." 35 U.S.C. § 293. As a result, this Court has personal jurisdiction over defendants' under 35 U.S.C. § 293.

### 2.      Failure to State a Claim for Relief

Defendants' second argument for dismissal of plaintiffs' false patent marking claim is that plaintiffs have failed to state a claim for relief under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To overcome this hurdle, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Id.* In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *see also Atherton*, 567 F.3d at 681 (holding that a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

A person is liable for false patent marking under 35 U.S.C. § 292 who "marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public." Defendants argue that plaintiffs have failed to allege facts supporting the requisite element that the article be "unpatented."  Specifically, defendants argue that plaintiffs must allege that Plumpy'nut® is not covered by any patent—United States or foreign.

The text of 35 U.S.C. § 292 does not specify whether an "unpatented article" refers to any article not covered by a *United States* patent, or only to an article not covered by *any* patent, foreign or domestic.  Defendants rely on a number of federal district court cases to support the proposition that a person cannot be held liable for false patent marking if the article is protected by either a foreign or a domestic patent.  *Keystone Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 566 (W.D.N.Y. 2005) ("Section 292 does not differentiate between U.S. and foreign patents"); *KOR-CT, LLC v. Savvier, Inc.*, 344 F. Supp. 2d 847, 857-58 (D. Conn. 2004) ("[Section 292] only prohibits the marking of articles that are not subject to either foreign or domestic patent protection").  *See also Hearing Components, Inc. v. Shure, Inc.*, 2009 WL 815526, at *4 (E.D. Tex. March 26, 2009); *Project Strategies Corp. v. Nat'l Commc'ns Corp.*, 948 F. Supp. 218, 225-27 (E.D.N.Y. 1996).  This Court must strictly construe penal statutes like section 292.  *Noma Lites Canada, Ltd. v. Westinghouse Electric Corp.*, 399 F. Supp. 243, 254 (D.D.C. 1975).  Therefore, this Court agrees with the unanimous interpretation of the district courts that an article is not "unpatented" under 35 U.S.C. § 292 if it is covered by either a foreign or a domestic patent.

In light of this, the Court now must consider whether plaintiffs have properly alleged the requisite element of a false patent marking claim that the article be "unpatented." Plaintiffs allege the following relevant facts:

> 24.     [] Nutriset and IRD have been directly and indirectly causing the false marking of products allegedly licensed under the '284 Patent with the patent number of the '284 Patent *when the products are not covered by the claims of the '284 Patent*. The falsely marked products include at least [Plumpy'nut®] RUTF/RUF made by Societe de Transformation Alimentaire and [Plumpy'nut®] made by Nutriset. These products are marked as being covered by "IRD-Nutriset patent."

> 25.     IRD and Nutriset either directly mark upon, affix to or use in advertising or instruct their licensees to mark upon, affix to or use in advertising the '284 Patent, also known as the IRD-Nutriset patent in conjunction with the identified products in violation of 35 U.S.C. § 292, *with full knowledge that the claims of the '284 Patent do not cover the identified products*. More specifically, the identified products fail to meet at least the limitation of "an osmolality less than 100 mOsm/kg" as required by the independent claim of the '284 Patent.

Pls.' First Am. Compl. ¶¶24-25 (emphasis added). Significantly, plaintiffs *do* allege that Plumpy'nut® falls outside the '284 Patent, but plaintiffs *fail* to allege that Plumpy'nut® falls outside the scope of *any* patent, foreign or domestic, as 28 U.S.C. § 292 requires. Stated differently, accepting as true that the '284 Patent does not cover Plumpy'nut®, plaintiffs nonetheless fail to allege that Plumpy'nut® is not covered by any patent.

Plaintiffs have failed to allege that Plumpy'nut® is "unpatented" as required under 28 U.S.C. § 292. Therefore, defendants' motion to dismiss plaintiffs' false patent marking claim under Rule 12(b)(6) must be granted.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants defendants' motion [19] to dismiss plaintiffs' first amended complaint. A separate order consistent with this opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on November 18, 2011.